Sonjay Singh (*Pro Hac Vice*)
**SIRI & GLIMSTAD LLP**
745 Fifth Avenue, Suite 500
New York, New York 10151
Tel: (772) 783-8436
Email: ssingh@sirillp.com

Michael Connett (SBN #300314)
**SIRI & GLIMSTAD LLP**
700 S. Flower St., Ste. 1000
Los Angeles, CA 90017
Tel: 212-532-1091
Email : mconnett@sirillp.com

*Attorneys for Plaintiffs and the Putative Class*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

D.B. AND B.S., individually and on behalf of all others similarly situated,

Plaintiffs,

v.

BELLESA ENTERPRISES US, INC. AND BELLESA PRODUCTIONS, INC.,

Defendants.

Case No.: 2:25-cv-05099-JAK-MAR

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT**

Assigned to the Hon. John A. Kronstadt

| | |
|---|---|
| Date: | December 8, 2025 |
| Time: | 8:30 a.m. |
| Location: | 350 W. First Street<br>Courtroom 10C, 10th Floor<br>Los Angeles, CA 90012 |
| FAC Filed: | August 25, 2025 |
| Reply Date: | November 4, 2025 |

## TABLE OF CONTENTS


I. PRELIMINARY STATEMENT ........ 1

II. RELEVANT FACTUAL BACKGROUND ........ 2

A. The Parties ........ 2

B. Google's Tracking Tools ........ 3

C. Defendants' Use of Tracking Tools ........ 4

III. LEGAL STANDARD ........ 4

IV. ARGUMENT ........ 5

A. PLAINTIFFS DID NOT CONSENT TO DEFENDANTS' USE OF THE TRACKING TOOLS ........ 5

B. PLAINTIFFS' VPPA CLAIM IS WELL-PLED. ........ 6

i. Plaintiffs allege that Defendants disclosed their personally identifiable information. ........ 7

ii. Plaintiffs are consumers under the VPPA. ........ 13

C. PLAINTIFFS DID NOT CONSENT TO DEFENDANTS' VIOLATIONS OF THE ECPA. ........ 16

D. PLAINTIFFS PROPERLY ALLEGE A CLAIM UNDER NEW YORK GENERAL BUSINESS LAW § 349 ........ 16

E. PLAINTIFFS' INVASION OF PRIVACY CLAIM IS WELL-PLED UNDER CALIFORNIA LAW ........ 18

F. PLAINTIFFS' NEGLIGENCE CLAIM IS WELL-PLED ........ 19

G. IMPLIED CONTRACT ........ 19

H. UNJUST ENRICHMENT ........ 21

I. THE COURT HAS GENERAL JURISDICTION OVER BELLESA ENTERPRISES ........ 22

V. CONCLUSION ........ 23

# TABLE OF AUTHORITIES

## CASES

*Ade v. Viki, Inc.*,
2024 U.S. Dist. LEXIS 79467 (N.D. Cal. 2024) ---------------------------------- 11, 14

*In re Ambry Genetics Data Breach Litig.*,
567 F. Supp. 3d (C.D. Cal. 2021) ---------------------------------------------------- 21

*In re Anthem Inc. Data Breach Litig.*,
2016 U.S. Dist. LEXIS 70594 (N.D. Cal. 2016) -------------------------------------- 22

*Archer v. NBCUniversal Media, LLC.*,
2025 U.S. Dist. LEXIS 129598 (C.D. Cal. 2025)------------------------------------- 10

*Ashcroft v. Iqbal*,
556 U.S. (2009)------------------------------------------------------------------------------ 5

*C.M. v. MarinHealth Med. Grp., Inc.*,
2024 U.S. Dist. LEXIS 10189 (N.D. Cal. 2024) -------------------------------------- 21

*Cahill v. Liberty Mut. Ins. Co.*,
80 F.3d (9th Cir. 1996) ------------------------------------------------------------------- 5

*Doe v. Fullstory, Inc.*,
712 F. Supp. 3d (N.D. Cal. 2024) ----------------------------------------------- 19, 21

*Doe v. Regents of the Univ. of Cal.*,
672 F. Supp. 3d (N.D. Cal. 2023) ---------------------------------------------------- 19

*Doe v. Tenet Healthcare Corp.*,
2025 U.S. Dist. LEXIS 109134 (E.D. Cal. 2025) ------------------------------------ 11

*Edwards v. Mubi, Inc.*,
773 F. Supp. 3d (N.D. Cal. 2025) ---------------------------------------------------- 11

*Eichenberger v. ESPN, Inc.*,
876 F.3d (9th Cir. 2017)---------------------------------------------------------- *passim*

*Ellis v. Cartoon Network, Inc.*,
803 F.3d (11th Cir. 2015) ---------- 13

*ESG Capital Partners, Ltd. P'ship. v. Stratos*,
828 F.3d (9th Cir. 2016) ---------- 21

*In re Facebook Inc.*,
956 F.3d (2020) ---------- 22

*Fan v. NBA Props. Inc.*,
2024 U.S. Dist. LEXIS 57205 (N.D. Cal. 2024) ---------- 11

*Fink v. Time Warner Cable*,
714 F.3d (2d Cir. 2013) ---------- 18

*Fraley v. Facebook, Inc.*,
830 F. Supp. 2d (N.D. Cal. 2011) ---------- 22

*Garcia v. Bandai Namco Ent. Am. Inc.*,
2025 U.S. Dist. LEXIS 152616 (C.D. Cal. 2025) ---------- 11, 12

*Gerber v. Twitter, Inc.*,
2024 U.S. Dist. LEXIS 229023 (N.D. Cal. 2024) ---------- 20

*Ghanaat v. Numerade Labs, Inc.*,
689 F. Supp. 3d (N.D. Cal. 2023) ---------- 14

*Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.*,
328 F.3d (9th Cir. 2003) ---------- 23

*Hernandez v. Hillsides*, Inc.,
47 Cal 4th (2009) ---------- 18

*In re Hulu Privacy Litig.*,
2012 U.S. Dist. LEXIS 112916 (N.D. Cal. 2012) ---------- 14

*I.T. v. ChoicePoint LLC*,
2025 U.S. Dist. LEXIS 169202 (W.D. Wash. 2025) ---------- 11

*Jackson v. Fandom, Inc.,*
2023 U.S. Dist. LEXIS 125531 (N.D. Cal.2023) ---------------------------------- 14, 15

*Jefferson v. Healthline Media, Inc.*,
674 F. Supp. 3d (N.D. Cal. 2023) ---------------------------------------------------- 13

*Katz-Lacabe v. Oracle Am., Inc.*,
2023 U.S. Dist. LEXIS 178369 (N.D. Cal. 2023)-------------------------------------- 21

*Kilpatrick v. Texas & P. Ry.*,
72 F. Supp. (S.D.N.Y. 1947)---------------------------------------------------------- 28

*Knappenberger v. City of Phoenix*,
566 F.3d (9th Cir. 2009)---------------------------------------------------------------- 5

*Koch v. Acker, Merrall & Condit Co.*,
18 N.Y.3d (2012)------------------------------------------------------------------------ 17

*Kuzenski v. Uproxx LLC*, No.
2023 U.S. Dist. LEXIS 211822 (C.D. Cal.2023) ------------------------------------- 13

*Lawrence v. Texas*,
539 U.S. (2003)--------------------------------------------------------------------------- 1

*Lee v. Plex, Inc.*,
773 F. Supp. 3d (N.D. Cal. 2025) ------------------------------------------------- 7, 11

*Lee v. Springer Nature Am., Inc.,*
769 F. Supp. 3d (S.D.N.Y. 2025) -------------------------------------------------- 15

*In re Meta Pixel Healthcare Litig.*,
647 F. Supp. 3d 2022 U.S. Dist. LEXIS 230754 (2022) ------------------------------ 19

*Mantikas v. Kellogg Co.*,
910 F.3d (2d Cir. 2018)----------------------------------------------------------------- 18

*Manza v. Pesi, Inc.*,
784 F. Supp. 3d (W.D. Wis. 2025)-------------------------------------------------------- 11

*Markels v. AARP*,
689 F. Supp. 3d (N.D. Cal. 2023) ---------- 14

*Matthews v. Apple, Inc.*,
769 F. Supp. 3d (N.D. Cal. 2024) ---------- 16

*Mollett v. Netflix, Inc.*,
795 F.3d (9th Cir. 2015)---------- 6

*Nguyen v. Elsevier Inc.*,
2025 U.S. Dist. LEXIS 109280 (N.D. Cal. 2025)---------- 12

*Orlander v. Staples*, Inc.,
802 F3d (2d Cir. 2015) ---------- 17

*Plotsker v. Envato Pty Ltd.*
2025 U.S. Dist. LEXIS 168070 (C.D. Cal. 2025)---------- 11

*Rascon v. Checkcare Enters.*,
2006 U.S. Dist. LEXIS 56433 (N.D. Cal. 2006) ---------- 23

*Rollins v. Dignity Health*,
338 F. Supp. 3d (N.D. Cal. 2018) ---------- 16

*Rudolph v. Hudson's Bay Co.*,
2019 U.S. Dist. LEXIS 77665 (S.D.N.Y. 2019) ---------- 21

*Sellers v. Bleacher Report, Inc.*,
2023 U.S. Dist. LEXIS 131579 (N.D. Cal. 2023)---------- 11

*Silver v. Stripe Inc.*,
2021 U.S. Dist. LEXIS 141090 (N.D. Cal. 2021)---------- 18, 19

*St. Aubin v. Carbon Health Techs., Inc.*,
2024 U.S. Dist. LEXIS 179067 (N.D. Cal. 2024)---------- 19

*Thornton v. Mindvalley, Inc.*,
2025 U.S. Dist. LEXIS 53202 (N.D. Cal. 2025) ---------- 11

*Wells Fargo & Co. v. Wells Fargo Express Co.*,
556 F.2d (9th Cir. 1977)---------------------------------------------------------------- 5, 23

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*,
2017 U.S. Dist. LEXIS 140212 (N.D. Cal. 2017)-----------------------------------21, 22

*Yershov v. Gannett Satellite Info. Network, Inc.*
820 F.3d (1st Cir. 2016) -------------------------------------------------------------9, 10 13

STATUTES

18 U.S.C. § 2710(a)(1) -------------------------------------------------------------------- 13
18 U.S.C. § 2710(a)(3) ------------------------------------------------------------------7, 8, 13
18 U.S.C. § 2710(b)(1) -------------------------------------------------------------------- 13
NY CLS Gen Bus § 349 ------------------------------------------------------------------- 16

# I. PRELIMINARY STATEMENT

The United States Supreme Court has made it clear that an individual's sexual behavior within their own home represents the "most private human conduct…in the most private of places." *Lawrence v. Texas*, 539 U.S. 558, 567 (2003). For many Americans, their sexual lives in some way involve viewing pornography. But, despite its prevalence, pornography usage is still a topic that most individuals prefer to keep private. As a result, the unwanted disclosure of such information can be enormously harmful, impacting an individual's reputation, livelihood, personal relationships, and mental wellbeing.

Plaintiffs utilized Defendants' Website to view pornography. Unfortunately, unbeknownst to Plaintiffs, Defendants were secretly tracking and disclosing Plaintiffs' interactions with the Website, including specific information about the videos they viewed coupled with their personally identifiable information ("PII") (collectively, the "Sensitive Information"). Even more troubling is the fact that Defendants then compiled and disclosed Plaintiffs' Sensitive Information to third parties, including one of the largest advertisers in the world, Google. Indeed, Defendants installed advertising surveillance software offered by Google ("the Tracking Tools"), allowing Google to harvest the Sensitive Information of users for the purpose of targeted advertising.

In their Motion to Dismiss, Defendants do not challenge the factual allegation that they collected and disclosed the Sensitive Information. Instead, Defendants argue that

Plaintiffs were put on notice of Defendants' practices through the Terms of Service and Privacy Policy. However, such terms did *not* disclose the complained-of practices.

Defendants also argue that Plaintiffs' claim under the Video Privacy Protection Act of 1988 ("VPPA") fails because Defendants' disclosures supposedly do not implicate any PII. However, as explained below, Defendants disclose a wealth of personal information about Plaintiffs, including detailed information about the videos they view, as well as information that companies like Google use to personally identify each user, such as their Google ID or Browser Fingerprint information.

Defendant Bellesa Enterprises US, Inc. ("Defendant" or "Bellesa Enterprises") also challenges this Court's jurisdiction over it. Plaintiffs dispute the facts provided by the Defendant and argue that Bellesa Enterprises' principal place of business is, in fact, California, giving this Court jurisdiction over it.

Further, as explained herein, Plaintiffs' statutory and common law claims are well-pled. For each of these reasons and those discussed further herein, Defendants' Motion to Dismiss should be denied.

## II. <u>RELEVANT FACTUAL BACKGROUND</u>

### A. The Parties

Defendants Bellesa Enterprises US, Inc. and Bellesa Productions, Inc. (collectively, "Defendants") are producers and distributors of pornography. Defendants market their product offering as "not 'porn for women', it's porn by women. It's porn

for everyone who wants something real."[1] Plaintiffs are individuals who registered for accounts on Defendants' Website and viewed pornographic videos on that Website. *See* Plaintiffs' First Amended Complaint ("FAC") ¶¶ 17, 22.

**B. Google's Tracking Tools**

Google offers website operators access to its proprietary suites of marketing, advertising and customer analytics software. FAC ¶ 8. Armed with these programs, website operators can leverage Google's enormous database of consumer information for the purposes of deploying targeted advertisements, performing minute analyses of their customer bases, and identifying new market segments that may be exploited. *Id.* But, in exchange for access to this software, website operators like Defendants must install Google's Tracking Tools on their respective websites—third party surveillance software that captures sensitive, personally identifiable information provided to the website operator by its users. *Id.* ¶ 9. Google then aggregates this user information into "advertising profiles" consisting of all of the data that they have collected about a given user. *Id.* ¶ 45. With these advertising profiles, Google, Facebook, and others can sell hyper-precise advertising services, allowing their clients to target internet users based on combinations of their location, age, race, interests, hobbies, life events (*e.g.*, recent marriages, graduation, or income, type of employment, use of specific apps or websites, and more). *Id.* Where an internet user has a Google account, this information can be

[1] *About Us,* BELLESA, *available online at*: https://www.bellesa.co/assets/files/bellesa-films.pdf.

correlated to their identity, through tracking cookies installed on the user's web browser. *Id*. ¶¶ 59-63.

**C. Defendants' Use of Tracking Tools**

Defendants installed Google's Tracking Tools on the Website. FAC ¶ 51. Then, Defendants specifically chose to take the generic version of the Tracking Tools and configure them to convey almost any action taken by users of the Website, including Plaintiffs. *Id*. ¶ 68. These Tracking Tools captured and disclosed a wealth of information about Plaintiffs to Google, including URLs and titles of videos they were viewing, information that identifies their respective Google accounts, and information used to create a browser fingerprint, such as their language preference, screen resolution, browser software and version, and operating system software and version. *Id.* ¶ 70

Importantly, Plaintiffs never consented to Defendants' use of the Tracking Tools. FAC ¶ 75. Indeed, Defendants' Privacy Policy explicitly assures Website visitors that, Defendants "do not sell or redistribute personal information." ECF No. 30-4, at 2. In reality, however, Defendants *do* share their users' Sensitive Information, in exchange for enhanced marketing and advertising services, thereby allowing third-parties like Google to harvest the users' Sensitive Information. FAC ¶ 43.

## III. <u>LEGAL STANDARD</u>

On a Rule 12(b)(6) motion to dismiss, the burden of proof is on the movant, and the court draws all reasonable inferences in plaintiff's favor, assuming all well-pleaded

factual allegations to be true and determining whether they plausibly give rise to an entitlement to relief. *See, e.g., Cahill v. Liberty Mut. Ins. Co.,* 80 F.3d 336, 337– 38 (9th Cir. 1996). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (stating that the plausibility standard demands more than "a formulaic recitation of the elements of a cause of action," or "naked assertions devoid of further factual enhancement") (internal quotation marks omitted). Courts are instructed to freely grant leave to amend unless the defects identified could not possibly be cured. *See, e.g., Knappenberger v. City of Phoenix*, 566 F.3d 936, 942 (9th Cir. 2009).

## IV. ARGUMENT

### A. PLAINTIFFS DID NOT CONSENT TO DEFENDANTS' USE OF THE TRACKING TOOLS

In its Motion, Defendants argue that Plaintiffs consented to the disclosure of their PII to Google. *See* Mot. 5:18-28. Not so. In their Privacy Policy, Defendants explicitly promise users that Bellesa "does not track information that would render an individual personally identifiable, unless that user willingly supplies that information to Bellesa." ECF No. 30-4, at 1. Further to that promise, the Privacy Policy states that Defendants "do not sell or redistribute personal information." *Id.* at 2. In fact, the Privacy Policy specifically enumerates the situations under which Defendants will provide personal information to third-parties, which are in full:

- To third party service providers with assurance that such third party service providers use the personal information only as is required to perform the task they have been retained for, and agree to follow policies compliant with privacy laws;
- To comply with any legal requirements;
- To enforce our privacy policy, or to protect your safety and security while visiting our website;
- …in connection with a corporate reorganization, merger or amalgamation, or the sale of all or substantially all of our assets, provided that the personal information disclosed continues to be used for the purposes permitted by this Privacy Policy by the entity acquiring this information; or
- To any other third parties, with your consent to such collection, use or disclosure.

*Id.*, at 3. Additionally, the Privacy Policy fails to mention anything regarding cookies, pixels, Google Analytics, or Tracking Tools of any kind. *See generally*, *id.*

The aforementioned promises are explicitly contradicted by Plaintiffs' allegations. Indeed, Plaintiffs each allege that they did not authorize Defendants to disclose any aspects of their communications with them to third parties, but that Defendants disclosed their data to third parties like Google. *See* FAC ¶¶ 19, 24. As such, Plaintiffs never consented to Defendants' use of the Tracking Tools, nor to the disclosure of their Sensitive Information to third-parties, and as such Defendants violated their promises to Plaintiffs to keep their data private.

**B. PLAINTIFFS' VPPA CLAIM IS WELL-PLED.**

The VPPA "prohibits a 'video tape service provider' from knowingly disclosing 'personally identifiable information' about one of its consumers '*to any person*'…" *Mollett v. Netflix, Inc.*, 795 F.3d 1062, 1066 (9th Cir. 2015) (citations omitted) (emphasis

in original). As the Ninth Circuit noted, "[c]onsistent with Congress's purpose, the [VPPA]'s language is broad." *Id*. In response to Plaintiffs' claim under the VPPA, Defendants argue that (1) Plaintiffs do not properly allege that Defendants disclosed their PII; and (2) that Plaintiffs are not "consumers" within the meaning of the VPPA. As explained below, both of Defendants' arguments fail.

**i. Plaintiffs allege that Defendants disclosed their personally identifiable information.**

Under the VPPA, "the term 'personally identifiable information' includes information which identifies a person as having requested or obtained specific video materials or services..." 18 U.S.C. § 2710(a)(3). In this Circuit, "[p]ersonally identifiable information includes information that 'standing alone, identifies a person' as well as information that is 'capable of' identifying a person." *Lee v. Plex, Inc.*, 773 F. Supp. 3d 755, 772 (N.D. Cal. 2025) (quoting *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 984 (9th Cir. 2017).

Here, Plaintiffs allege that Bellesa transmits a wealth of information about how users interact with the Website to third-party advertisers such as Google. FAC ¶ 6. Specifically, Plaintiffs allege that Bellesa discloses the URL and specific data about the videos that they view (*id.* ¶¶ 69), while simultaneously disclosing PII about its users, including the Google "cid" and "sid" cookies, which identify their Google accounts. *Id*. ¶ 70. In addition, Bellesa discloses information that creates a browser fingerprint for each user, including the user's language preferences, screen resolution, browser software

and version, operating system software and version, device type, network type, and internet service provider. *Id*. The purpose of these disclosures is to create comprehensive advertising profiles so that users can be precision-targeted with ads based on their viewing habits. *Id*. ¶ 45. Thus, there is no question that the disclosed information is "capable" of identifying specific users and the videos they watch, as contemplated by 18 U.S.C. § 2710(a)(3).

Defendants' argument primarily relies on the Ninth Circuit's decision in *Eichenberger v. ESPN, Inc*., 876 F.3d 979 (9th Cir. 2017). But, far from supporting Defendants' position, *Eichenberger* instead shows why Defendants' argument must fail. In *Eichenberger*, the plaintiff downloaded an app produced by defendant ESPN, Inc. ("ESPN") onto his Roku digital streaming device, a device which "allows users to view videos and other content on their televisions by means of Internet streaming." *Id* at 981. Unbeknownst to the plaintiff, "every time [the p]laintiff watched a video, Defendant knowingly disclosed to a third party, Adobe Analytics: (1) [the plaintiff]'s Roku device serial number and (2) the identity of the video that he watched." *Id*. On appeal, the Ninth Circuit upheld dismissal of the plaintiff's claims, finding that the information disclosed did "not constitute 'personally identifiable information' under the VPPA." *Id*. at 986.

However, in *Eichenberger*, the Roku serial number disclosures were, crucially, *not* made to Roku, who would of course be able to link its own device serial numbers to its customers' identities. Rather, they were made to Adobe Analytics, who was only able

to identify the individuals associated with the serial numbers by "connecting that information 'with existing data already in Adobe's profile of th[ose] individual[s],'…such as 'email addresses, account information, or Facebook profile information, including photos and usernames'—***from sources other than Defendant***." *Id*. (emphasis added). This point was critical to the Ninth Circuit's analysis. Because the VPPA focuses on what a video service provider "knowingly discloses," the Ninth Circuit reasoned that a VPPA violation cannot lie where, as with ESPN's disclosures to Adobe Analytics, the video provider would not have "understood that if [it] disclosed" the relevant information to a third party, "the recipient of that information could identify the customer." *Id*. at 985.

The Ninth Circuit specifically acknowledged that its decision did not conflict with the First Circuit's decision in *Yershov v. Gannett Satellite Info. Network, Inc. Eichenberger*, 876 F.3d at 986 ("it is not difficult to imagine other examples that may also count [as personally identifying information]—for example…as in *Yershov*, the GPS coordinates of a particular device") In *Yershov*, the First Circuit found that GPS information was personally identifiable under the VPPA where the discloser knew that the third-party recipient had "the 'game program,' so to speak, allowing it to link the GPS address and device identifier information to a certain person by name, address, phone number, and more." *Yershov*, 820 F.3d 482, 486 (1st Cir. 2016).

Plaintiffs allege, and discovery will confirm, that the Google ID numbers disclosed to Google by Defendants allow Google to identify their Google accounts without reference to any additional information. *See* FAC ¶ 70. Thus, this matter is similar to *Yershov*, rather than *Eichenberger*, because Defendants knew that the information they disclosed to Google allowed Google to identify Plaintiffs without reference to any other data. *Compare id.*, *and Yershov*, 820 F.3d at 486 *with Eichenberger*, 876 F.3d at 986. Moreover, Defendants "understood that if [they] disclosed" Plaintiffs' Google identifiers and pornographic viewing history to Google, that "the recipient of that information could identify [Plaintiffs]." 876 F.3d at 985. Indeed, Defendants used Google's advertising tools precisely because of Google's ability to target specific users with precise targeted ads based on their viewing habits. FAC ¶ 45. Accordingly, Defendants' use of the Tracking Tools violated the VPPA under the principles set forth in *Eichenberger* and supported in *Yershov*.

The vast majority of courts that have applied *Eichenberger* to the disclosure of advertising IDs through Tracking Tools have reached this same conclusion. For example, in *Archer v. NBCUniversal Media, LLC*, the court found that where video information linked to a Facebook ID number was disclosed to Facebook's parent company, Meta, the plaintiffs' allegations were distinguishable from *Eichenberger* because Meta could identify the plaintiffs through their Facebook ID numbers without the need for any other data that the defendant never disclosed nor possessed." No. 2:24-

CV-10744-AB-JC, 2025 U.S. Dist. LEXIS 129598, at *13-14 (C.D. Cal. July 2, 2025); *see also Sellers v. Bleacher Report, Inc.*, No. 23-cv-00368-SI, 2023 U.S. Dist. LEXIS 131579, at *14 (N.D. Cal. July 28, 2023 (disclosure of Facebook ID-linked information to Meta through Meta Tracking Tools is personally identifiable under the VPPA);[2] *Edwards v. Mubi, Inc.*, 773 F. Supp. 3d 868, 885 (N.D. Cal. 2025) (same as to X, Twitter, and Meta Tracking Tools); *Thornton v. Mindvalley, Inc.*, No. 24-cv-00593-EKL, 2025 U.S. Dist. LEXIS 53202, at *11-12 (N.D. Cal. Feb. 14, 2025) (same); *Plotsker v. Envato Pty Ltd.,* No. 2:24-cv-04412-MEMF-RAO, 2025 U.S. Dist. LEXIS 168070, at *20 (C.D. Cal. Aug. 26, 2025) (same); *Garcia v. Bandai Namco Ent. Am. Inc.,* No. 8:25-cv-00967-DOC-PVC, 2025 U.S. Dist. LEXIS 152616, at *23 (C.D. Cal. Aug. 7, 2025) (same); *Lee*, 773 F. Supp. 3d at 772-73 (same); *Ade v. Viki, Inc.*, No. 23-cv-02161-RFL, 2024 U.S. Dist. LEXIS 79467, 2024 WL 1880153, at *2 (N.D. Cal. Mar. 28, 2024) (same); *Fan v. NBA Props. Inc.*, No. 23-cv-05069-SI, 2024 U.S. Dist. LEXIS 57205, 2024 WL 1297643, at *2 (N.D. Cal. Mar. 26, 2024) (same).[3] Additionally, while the Google user account information is sufficient to constitute PII under the VPPA,

---

[2] Google and Meta's Pixel Tracking Tools function in the same manner. *See, e.g., Doe v. Tenet Healthcare Corp.*, No. 1:23-cv-01106-DC-CKD, 2025 U.S. Dist. LEXIS 109134, at *10 (E.D. Cal. June 9, 2025); *I.T. v. ChoicePoint LLC*, No. C25-00193, 2025 U.S. Dist. LEXIS 169202, at *3 (W.D. Wash. Aug. 29, 2025).

[3] In fact, these ID numbers may do more to personally identify a user than the dissemination of that person's name. As one court observed, "[e]ven a name may be ambiguous because most names are not unique…" *Manza v. Pesi, Inc.*, 784 F. Supp. 3d 1110 (W.D. Wis. 2025). In contrast, one court in this Circuit observed that a Facebook ID (as referenced above) is "a unique identifier that is enough, on its own, to identify a person." *Sellers v. Bleacher Report, Inc.*, No. 23-cv-00368-SI, 2023 U.S. Dist. LEXIS 131579, at *13 (N.D. Cal. July 28, 2023). The same is true of Google's cid cookies.

Defendants disclose even *more* information than that. As specified *supra*, Defendants disclose extensive data about the device and browser on which a user accesses the Website, which information is often unique and can track a user's activity across the internet. *See* FAC ¶ 66.

Additionally, *Eichenberger* was decided eight years ago and, as the Ninth Circuit observed, "modern technology may indeed alter—or may already have altered—what qualifies under the statute." *Eichenberger*, 876 F.3d at 986. For example, "[a] Facebook link or an email address may very well readily enable an 'ordinary person' to identify an individual." *Id*. Thus, even if there was merit to Defendants' argument, which there is not, it would turn on a question of fact that should be adjudicated by a fact-finder rather than on a Rule 12(b)(6) motion. *See Garcia v. Bandai Namco Ent. Am. Inc.*, No. 8:25-cv-00967-DOC-PVC, 2025 U.S. Dist. LEXIS 152616, at *22-23 (C.D. Cal. Aug. 7, 2025) ("At a minimum, it is a question of fact whether an ordinary person could identify Plaintiff's Facebook ID and video game titles from the Pixel Code."); *see also Nguyen v. Elsevier Inc.*, No. 25-cv-00825-NC, 2025 U.S. Dist. LEXIS 109280, at *11 (N.D. Cal. June 9, 2025) ("As the Ninth Circuit requires PII to be information that 'readily permit[s] an ordinary person to identify a specific individual's video-watching behavior,' this lack of consensus raises a dispute of fact." (quoting *Eichenberger*, 876 F.3d at 985). Here, Plaintiffs plausibly allege that Bellesa's disclosure of information to Google identifies specific consumers and the videos which they requested or obtained

from Bellesa, thereby plausibly alleging a claim under the VPPA. *See* 18 U.S.C. § 2710(a)(3).

**ii. Plaintiffs are consumers under the VPPA.**

The VPPA defines a consumer as "any renter, purchaser, or subscriber of goods or services from a video tape service provider." § 2710(a)(1). Defendants argue, as a threshold matter, that Plaintiffs are not "consumers" as defined by the VPPA and, thus, cannot bring a claim for a violation of § 2710(b)(1).

To be considered a "consumer" under the VPPA, an individual does not have to make purchases, which "squares with the statutory text and the decisions of the two circuits to have considered the issue." *Jefferson v. Healthline Media, Inc.*, 674 F. Supp. 3d 760, 764 (N.D. Cal. 2023) (citing *Ellis v. Cartoon Network, Inc.*, 803 F.3d 1251, 1256 (11th Cir. 2015); *Yershov* 820 F.3d at 487-88 (1st Cir. 2016)). "Congress could have easily specified that 'consumer' meant 'any renter, purchaser, or paid subscriber,' but chose not to qualify 'subscriber' in that fashion." *Jefferson v. Healthline Media, Inc.*, 674 F. Supp. 3d 760, 764 (N.D. Cal. 2023). Thus, "the VPPA broadly protects paid and unpaid subscribers." *Id.*

Defendants cite only one case to support their argument that Plaintiffs are not "consumers," and concede that there is no controlling authority on the definition of a "subscriber" under VPPA. *See* Mot. 10:20-23 (citing *Kuzenski v. Uproxx LLC*, No. 2:23-cv-00945-WLH-AGR, 2023 U.S. Dist. LEXIS 211822, (C.D. Cal. Nov. 27, 2023). In

fact, many courts within this Circuit have already explicitly rejected such an argument. For example, as is the case here, the plaintiff in *Jackson v. Fandom, Inc.* alleged "that she created a Fandom account; became a registered user; 'provided Fandom with her PII, including her name and email address'; and then used Fandom to watch videos." No. 22-cv-04423-JST, 2023 U.S. Dist. LEXIS 125531, at *9 (N.D. Cal. July 20, 2023). The court held that her allegations were "sufficient to plead that [plaintiff] is a subscriber, and therefore a consumer, within the meaning of the statute." *Id.* Similarly, in *Ade v. Viki, Inc.*, the court held that allegations that the plaintiffs provided their names and email addresses to register as members of the defendant's website, combined with their access to video content, supported a VPPA claim. No. 23-cv-02161-RFL, 2024 U.S. Dist. LEXIS 79467, at *3 (N.D. Cal. Mar. 28, 2024). Many other courts have reached the same conclusion. *See, e.g.*, *In re Hulu Privacy Litig.*, No. C 11-03764 LB, 2012 U.S. Dist. LEXIS 112916, at *23 (N.D. Cal. Aug. 10, 2012) (finding plaintiffs' allegations that they "signed up for a Hulu account, became registered users, received a Hulu ID, established Hulu profiles, and used Hulu's video streaming services" sufficient to establish they were subscribers and, thus, consumers within the meaning of the VPPA); *Ghanaat v. Numerade Labs, Inc.*, 689 F. Supp. 3d 714, 722 (N.D. Cal. 2023) (holding that allegations that plaintiffs registered for an account and viewed video content on defendant's website satisfied the "consumer" definition of the VPPA); *Markels v. AARP*, 689 F. Supp. 3d 722, 728 (N.D. Cal. 2023) ("As explained in *Ghanaat*,

this Court finds that where users exchanged personal information in return for a service, they are consumers."); *Lee v. Springer Nature Am., Inc.,* 769 F. Supp. 3d 234, 254 (S.D.N.Y. 2025) ("A person becomes a VPPA subscriber by providing consideration in the form of personal information in exchange for a good or service.").

Defendants attempt to persuade the Court that the subscription must have a "factual nexus or relationship" with "the defendant's allegedly actionable video content." Mot. 11:3-4 (citing *Kuzenski,* 2023 U.S. Dist. LEXIS 211822, at *10). Even if that were the case (it is not), Defendants cite no authority to support the argument that there is no "factual nexus or relationship" to the use of videos that are available to both registered and unregistered users. *See* Mot. 17:12-16. Indeed, nothing in *Jackson* indicates that the videos at issue were restricted to subscribers, yet the court found that the plaintiff was a subscriber. *Jackson*, 2023 U.S. Dist. LEXIS 125531, at *1, 9. Even the sole opinion cited by Defendants acknowledges that exclusive access to video content is just one factor to be considered in the subscriber analysis. *Kuzenski*, 2023 U.S. Dist. LEXIS 211822, at *13, n. 6. ("Further, the Court is not creating a bright-line, categorical rule requiring that a subscription must provide access to exclusive video content not otherwise available to viewers without a subscription"). Further still, even if they were able to cite any relevant authority, Defendants argue that "content on Bellesa.co *is* available to unregistered users…" Mot. 11:7-8 (emphasis in original). However, it is not uncommon for websites to make *some* content available to

unregistered users while other content is exclusive to registered users and Defendants do not establish that *every* video on Bellesa.co is available to unregistered users. Additionally, though Defendants seek judicial notice of the entire contents of the Bellesa.co website, they provide no specific webpages and failed to properly make any such request in their Request for Judicial Notice. Moreover, contrary to Defendants' argument, the fact "[t]hat a document 'resides on a publicly-available website' 'is an insufficient basis for judicial notice.'" *Matthews v. Apple, Inc.*, 769 F. Supp. 3d 999, 1008 (N.D. Cal. 2024) (quoting *Rollins v. Dignity Health*, 338 F. Supp. 3d 1025, 1033 (N.D. Cal. 2018)). Thus, this Court should not endeavor to resolve, prior to the commencement of discovery, the factual dispute regarding what videos registered and unregistered users could access on Bellesa.co.

For these reasons, Plaintiffs' VPPA claim is well-pled and Defendants' Motion should be denied.

### C. PLAINTIFFS DID NOT CONSENT TO DEFENDANTS' VIOLATIONS OF THE ECPA.

Defendants' sole argument with regards to Plaintiffs' ECPA claims is that Plaintiffs' purported consent to Defendants' Privacy Policy is an absolute bar to Plaintiffs' claims under the ECPA. This arguments fails for the reasons stated in § IV(A), *supra*.

### D. PLAINTIFFS PROPERLY ALLEGE A CLAIM UNDER NEW YORK GENERAL BUSINESS LAW § 349.

To maintain a claim under Section 349, the conduct at issue must be "'materially misleading'" and the plaintiff must have "'suffered injury as a result of the allegedly deceptive act or practice.'" *Orlander v. Staples*, Inc., 802 F3d 289, 300 (2d Cir. 2015) (quoting *Koch v. Acker, Merrall & Condit Co.*, 18 N.Y.3d 940, 967 (2012)). In this case, Plaintiffs have adequately alleged that Defendants' conduct was materially misleading and that they suffered an injury because of that misleading conduct.

***First***, Plaintiffs allege that Defendants' conduct is materially misleading because, "[u]nbeknownst to Plaintiffs and Class Members, Defendant intentionally configured the Google Pixels installed on its Website to capture and transmit an enormous amount of Sensitive Information about them and their use of the website." FAC ¶ 67. Defendants' conduct was materially misleading because Plaintiffs were not shown any disclaimer or warning that their Sensitive Information would be collected and disclosed to third parties. *See* FAC ¶ 73. Indeed, the tracking software utilized by Defendants was only viewable by analyzing network information transmitted by Defendants' website through examination of its source code or by using sophisticated software tools—making the tracking software invisible to Plaintiffs and the average internet user. *See* FAC ¶ 72.

***Second***, as explained in § IV(A), *supra*, Defendants made explicit promises in their Privacy Policy that they would not disclose Plaintiffs' Sensitive Information to third parties, yet did so anyway.

Thus, Plaintiffs have "plausibly allege[d] that the deceptive conduct was 'likely to mislead a reasonable consumer acting reasonably under the circumstances.'" *Mantikas v. Kellogg Co.*, 910 F.3d 633, 636 (2d Cir. 2018) (quoting *Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013)).

**D. PLAINTIFFS' INVASION OF PRIVACY CLAIM IS WELL-PLED UNDER CALIFORNIA LAW.**

To state a claim for intrusion upon seclusion, "[p]laintiffs must show that: (1) a defendant 'intentionally intrude[d] into a place, conversation, or matter as to which the plaintiff has a reasonable expectation of privacy,' and (2) that the intrusion was 'highly offensive' to a reasonable person." *Silver v. Stripe Inc.*, 2021 U.S. Dist. LEXIS 141090, *16 (N.D. Cal. July 28, 2021) (quoting *Hernandez v. Hillsides*, Inc., 47 Cal. 4th 272, 287, 97 Cal. Rptr. 3d 274, 211 P.3d 1063(2009)). Defendants argue that Plaintiffs cannot establish a reasonable expectation of privacy under these circumstances due to their purported consent to Defendants' Privacy Policy. This argument once again fails for the same reasons stated in § IV(A), *supra*. Indeed, Plaintiffs have alleged an invasion of privacy under California law. The vast majority of courts applying California law have found that a defendant's use of Tracking Tools to disclose personal information can

create a claim for invasion of privacy.[4] Plaintiffs' analogous allegations with regard to their Sensitive Information—which this Court has already found to be sufficiently sensitive to warrant the use of pseudonymization—properly pleads a claim for invasion of privacy under California law. *See* ECF No. 12, 29.

**E. PLAINTIFFS' NEGLIGENCE CLAIM IS WELL-PLED**

Once again, Defendants argue that Plaintiffs' purported consent to Defendants' Privacy Notice defeats Plaintiffs' negligence claims. This argument again fails for the reasons stated in § IV(A), *supra*.

F. **IMPLIED CONTRACT**

Plaintiffs entered into an implied contract with Defendants when they registered for accounts, exchanging their Sensitive Information for services. *See* FAC ¶ 132. In accordance with that implied agreement, Defendants agreed to safeguard that Sensitive Information and to not disclose it without consent. *Id*. Plaintiffs would not have entrusted Defendants with their Sensitive Information in the absence of an implied contract obligating Defendants not to disclose that Sensitive Information. *Id*. at ¶ 134. Defendants breached the implied contract by disclosing Plaintiffs' Sensitive Information to third parties such as Google. *Id*. at ¶ 135.

---

[4] *See, e.g.*, *Silver*, 2021 U.S. Dist. LEXIS 141090, at *15 ("plaintiffs' allegations that [defendant] compiled and disseminated plaintiffs' sensitive data precludes the Court from finding that plaintiffs have no reasonable expectation of privacy"); *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d at 801 (same); *Doe v. Regents of the Univ. of Cal.*, 672 F. Supp. 3d 813, 820 (N.D. Cal. 2023) (same); *St. Aubin v. Carbon Health Techs., Inc.*, No. 24-cv-00667-JST, 2024 U.S. Dist. LEXIS 179067, at *37 (N.D. Cal. Oct. 1, 2024) (same); *Doe v. Fullstory, Inc.*, 712 F. Supp. 3d 1244 (N.D. Cal. 2024) (same).

For the reasons stated in § IV(A), *supra*, Defendants' Privacy Policy *does not* disclose the complained-of data protection practices. *See* Mot. 21:15-18. The Privacy Policy explicitly states: "We do not sell or redistribute personal information." ECF 30-04, at 3. This statement is followed by several enumerated exceptions, which only apply if the user "consents in writing" or if such disclosure is "required by law." *Id*. Defendants do not and, in fact, cannot allege that Plaintiffs consented to the complained-of disclosures *in writing*, nor that such unauthorized disclosures were legally required.

Defendants rely primarily on Washington District Court cases to support their arguments, but various California District Courts have reached different conclusions. For example, the facts in this case are similar to those in *Gerber v. Twitter, Inc*., No. 4:23-cv-00186-KAW, 2024 U.S. Dist. LEXIS 229023, at *27 (N.D. Cal. Dec. 18, 2024), in which the "[p]laintiffs…signed up for Twitter with the understanding that Twitter would protect their PII, and they trusted the company to so." In *Gerber*, the plaintiffs based their argument for a breach of implied contract on Twitter's User Agreement, which laid out how Twitter would use or not use plaintiffs' data, as well as various representations on Twitter's website. *Id*. at *26. The court found that "[a]t the pleadings stage, these promises to protect users' PII are sufficient to establish the existence of an

implied contract, and Twitter's alleged failure to safeguard that information is sufficient to state a claim for its breach." *Id*. at *27. The same is true in this case.[5]

**G. UNJUST ENRICHMENT**

To state a claim for unjust enrichment, Plaintiffs must allege that Defendants received and unjustly retained a benefit at their expense. *See ESG Capital Partners, Ltd. P'ship. v. Stratos*, 828 F.3d 1023, 1038 (9th Cir. 2016). District courts in the Ninth Circuit routinely allow unjust enrichment claims to proceed in pixel and data misuse cases like this one.[6] Moreover, the Ninth Circuit has held that a plaintiff is entitled to disgorgement of unjustly earned profits regardless of whether a defendant's actions "caused a plaintiff to directly expend his or her own financial resources or whether a

---

[5] *See also In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, No. 16-MD-02752-LHK, 2017 U.S. Dist. LEXIS 140212, at *166 (N.D. Cal. Aug. 30, 2017) (allegations that an implied contract was created when plaintiffs opened accounts with defendants, that the terms of those implied contracts were set forth in the terms of service and privacy policies, and that defendants breached these implied contracts because plaintiffs' personally identifying information was not adequately protected by defendants were sufficient to put defendants on notice of the nature, source, and terms of the alleged implied contract and, thus, state a claim); *In re Ambry Genetics Data Breach Litig.*, 567 F. Supp. 3d 1130, 1144 (C.D. Cal. 2021) (allegations that plaintiffs gave their private information to defendants for purposes of obtaining genetic testing, with the understanding that defendants would take adequate measures to protect the information sufficient to state a claim for breach of implied contract); *Rudolph v. Hudson's Bay Co.*, No. 18-cv-8472 (PKC), 2019 U.S. Dist. LEXIS 77665, at *34 (S.D.N.Y. May 7, 2019) ("Other courts applying California law have concluded that an implied contract is formed where a person discloses sensitive information in order to receive a benefit, with the expectation that such information will be protected." (collecting cases)).

[6] *See, e.g.*, *Fullstory*, 712 F. Supp. 3d (denying dismissal of unjust enrichment claim in a Meta Pixel action alleging misuse of personally identifiable information); *C.M. v. MarinHealth Med. Grp., Inc.*, No. 23-cv-04179-WHO, 2024 U.S. Dist. LEXIS 10189, at *15 (N.D. Cal. Jan. 19, 2024) (similar); *Katz-Lacabe v. Oracle Am., Inc.*, No. 22-cv-04792-RS, 2023 U.S. Dist. LEXIS 178369, at *6 (N.D. Cal. Oct. 3, 2023) (holding that plaintiffs sufficiently pleaded facts to establish unjust enrichment where plaintiffs would not have visited defendant's websites with surreptitiously installed tracking technologies that conferred a benefit to defendant at the expense of plaintiffs' privacy).

defendant's actions directly caused the Plaintiffs' property to become less valuable." *In re Facebook Inc.*, 956 F.3d at 600 (2020).[7]

Defendants' consent argument again fails for the reasons stated in § IV(A), *supra*.

### H. THE COURT HAS GENERAL JURISDICTION OVER BELLESA ENTERPRISES

Defendants argue that Bellesa Enterprise's principal place of business is in Montreal. But, its public statements suggest otherwise. ***First***, Bellesa Enterprise commonly receives shipments in the United States. In fact, 109 out of 115 of the bills of lading for those shipments give Bellesa Enterprise's address as being located in "Los Angeles, CA" or "Long Beach, CA." *See* Singh Decl. ¶ 2, Ex. 1. ***Second***, according to importation records filed with the Federal Communications Commission, Bellesa Enterprises uniformly represents its address as 22647 Ventura Blvd #183, Woodland Hills, CA 91364. Singh Decl. ¶ 3, Exs. 2-A, 2-B. The signatory of these documents is Bellesa executive, Nikki Hoppenheim. Singh Decl. ¶¶ 3-4, Exs. 2-3. Moreover, these documents include importation of telecommunications and video recording equipment. *Id*. Such products have nothing to do with cross-border banking but are indeed relevant to the production of the pornographic videos hosted on the Website.

[7] *See also Fraley v. Facebook, Inc.*, 830 F. Supp. 2d 785, 815 (N.D. Cal. 2011) (recognizing plaintiff whose information was misappropriated by Facebook "may properly seek restitution"); *In re Anthem Inc. Data Breach Litig*., 2016 U.S. Dist. LEXIS 70594, at *14 (N.D. Cal. May 27, 2016) (finding that plaintiffs' personal information was stolen in a data breach and thus lost value, which constituted an injury to plaintiffs); *In re Yahoo! Inc. Customer Data Sec. Breach Litig*., 2017 U.S. Dist. LEXIS 140212, *13-14 (N.D. Cal. Aug. 30, 2017) (same).

In light of these public statements contradicting Defendants' statements regarding Bellesa Enterprise's operations and principal place of business, the Court should find that Plaintiffs have satisfied their prima facie burden to establish personal jurisdiction. In the alternative, Plaintiffs ask for jurisdictional discovery to evaluate the connections between Bellesa Enterprises and the State of California. Jurisdictional discovery "should be granted where pertinent facts bearing on the question of jurisdiction are controverted…or where a more satisfactory showing of the facts is necessary." *Wells Fargo & Co. v. Wells Fargo Express Co.,* 556 F.2d 406, 430 n.24 (9th Cir. 1977) (citation modified). The Ninth Circuit has noted that a district court abuses its discretion where it denies a request for jurisdictional discovery where "[f]urther discovery…might well demonstrate facts sufficient to constitute a basis for jurisdiction." *Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1135 (9th Cir. 2003). Where a defendant supports its argument against a finding of jurisdiction through an affidavit, jurisdictional discovery is appropriate where the plaintiff demonstrates how further discovery would allow it to contradict the facts set forth in the affidavit. *Rascon v. Checkcare Enters.*, No. C 06-0256 PJH, 2006 U.S. Dist. LEXIS 56433, at *8 (N.D. Cal. Aug. 1, 2006).

## V. <u>CONCLUSION</u>

For the aforementioned reasons, this Honoroable Court should DENY Defendants' Motion to Dismiss.

Dated: October 14, 2025

Respectfully submitted,

*/s/ Sonjay Singh*
Sonjay Singh (*Pro Hac Vice*)
**SIRI & GLIMSTAD LLP**
745 Fifth Avenue, Suite 500
New York, New York 10151
Tel: (772) 783-8436
Email: ssingh@sirillp.com

Michael Connett (SBN #300314)
**SIRI & GLIMSTAD LLP**
700 S. Flower St., Ste. 1000
Los Angeles, CA 90017
Tel: 212-532-1091
Email : mconnett@sirillp.com

*Attorneys for Plaintiffs and the Putative Class*