Nada I. Shamonki (SBN 205359)
NIShamonki@mintz.com
Nadia Zivkov (SBN 342509)
NAZivkov@mintz.com
**MINTZ, LEVIN, COHN, FERRIS, GLOVSKY AND POPEO, P.C.**
2049 Century Park East, Suite 300
Los Angeles, CA 90067
Telephone: (310) 586-3200
Facsimile: (310) 586-3202

Attorneys for Defendants
Bellesa Enterprises US Inc.
and Bellesa Productions Inc.

[*Additional Counsel on Next Page*]

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

D.B. and B.S., individually and on behalf of all others similarly situated,

Plaintiffs,

v.

BELLESA ENTERPRISES US, INC., and BELLESA PRODUCTIONS INC.,

Defendants.

Case No. 2:25-cv-05099-JAK-MAR

**REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT**

Assigned to the Hon. John A. Kronstadt

Hearing
Date: December 8, 2025
Time: 8:30 a.m.
Location: 350 W. First Street
Courtroom 10C, 10th Floor
Los Angeles, CA 90012

First Amended
Complaint filed: August 25, 2025
Trial set: not set

Christopher A. Lisy (admitted *Pro Hac Vice*)
CALisy@mintz.com
**MINTZ LEVIN COHN FERRIS GLOVSKY AND POPEO, P.C.**
One Financial Center
Boston, MA 02111
Telephone: (617) 542-6000
Facsimile: (617) 542-2241

Attorneys for Defendants
Bellesa Enterprises US Inc.
and Bellesa Productions Inc.

# TABLE OF CONTENTS


| | Page |
|---|---|
| PRELIMINARY STATEMENT | 1 |
| ARGUMENT | 2 |
| I. Plaintiffs' Opposition Does Not Save Their Amended Complaint. | 2 |
| A. Plaintiffs' VPPA claim (Count V) fails. | 2 |
| B. Plaintiffs acknowledge they agreed to Bellesa's Privacy Policy, which dooms most of their claims. | 5 |
| C. Plaintiffs fail to allege an implied contract under any applicable law. | 6 |
| D. Plaintiffs' unjust enrichment claim (Count IV) also fails because a plaintiff cannot sue in tort and claim unjust enrichment as a matter of law. | 8 |
| E. Plaintiffs concede their remaining claims fail. | 8 |
| II. Plaintiffs have not established general personal jurisdiction over Bellesa Enterprises US Inc. and are not entitled to jurisdictional discovery. | 9 |
| A. An in-state mailing address does not support general jurisdiction. | 9 |
| B. Plaintiffs' proposed jurisdictional discovery, based only on their hunch, would be a costly and unproductive fishing expedition. | 10 |
| CONCLUSION | 10 |
| LOCAL RULE 11-6.2 CERTIFICATION | 12 |

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ade v. Viki, Inc.*,
2024 WL 1880153 (N.D. Cal. Mar. 28, 2024) .......... 4

*Bristol-Myers Squibb Co. v. Super. Ct.*,
582 U.S. 255 (2017) .......... 9

*Brodsky v. Apple Inc.*,
2019 WL 4141936 (N.D. Cal. Aug. 30, 2019) .......... 8

*Carroll v. Chick-Fil-A, Inc.*,
2024 WL 1091193 (N.D. Cal. Feb. 13, 2024) .......... 4

*Caston v. Hoffmann-La Roche, Inc.*,
2025 WL 2837732 (9th Cir. Oct. 7, 2025) .......... 9

*Coufal Abogados v. AT&T, Inc.*,
223 F.3d 932 (9th Cir. 2000) .......... 6

*Daimler AG v. Bauman*,
571 U.S. 117 (2014) .......... 9

*Dinnerman v. Datto, Inc.*,
2024 WL 4406923 (C.D. Cal. Aug. 9, 2024) .......... 8

*Eichenberger v. ESPN, Inc.*,
876 F.3d 979 (9th Cir. 2017) .......... 3

*Frezza v. Google Inc.*,
2012 WL 5877587 (N.D. Cal. Nov. 20, 2012) .......... 3, 6

*Garcia v. Enter. Holdings, Inc.*,
78 F. Supp. 3d 1125 (N.D. Cal. 2015) .......... 6

*Gerber v. Twitter, Inc.*,
2024 WL 5173313 (N.D. Cal. Dec. 18, 2024) .......... 7

*Getz v. Boeing Co.*,
654 F.3d 852 (9th Cir. 2011) .......... 10

*Heerde v. Learfield Commc'ns, LLC*,
741 F. Supp. 3d 849 (C.D. Cal. 2024) .......... 2

*Hurt v. SH Grp. Hotels & Residence U.S. LLC*,
2024 WL 5244725 (C.D. Cal. Dec. 30, 2024) .......... 9

*In re Ambry Genetics Data Breach Litig.*,
567 F. Supp. 3d 1130 (C.D. Cal. 2021) .......... 7

*In re Anthem, Inc. Data Breach Litig.*,
162 F. Supp. 3d 953 (N.D. Cal. 2016) .......... 7

*In re Apple & AT&T iPad Unlimited Data Plan Litig.*,
802 F. Supp. 2d 1070 (N.D. Cal. 2011) .......... 8

*In re Hulu Privacy Litig.*,
2012 WL 3282960 (N.D. Cal. Aug. 10, 2012) .......... 4

*In re Nickelodeon Consumer Priv. Litig*,
827 F.3d 262 (3d Cir. 2016) .......... 2

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*,
2017 WL 3727318 (N.D. Cal. Aug. 30, 2017) .......... 7

*In re ZF-TRW Airbag Control Units Prods. Liab. Litig.*,
2022 WL 19432575 (C.D. Cal. Aug. 15, 2022) .......... 10

*Jackson v. Fandom, Inc.*,
2023 WL 4670285 (N.D. Cal. July 20, 2023) .......... 4

*Jefferson v. Healthline Media, Inc.*,
674 F. Supp. 3d 760 (N.D. Cal. 2023) .......... 4

*Kesterson v. Brenntag N. Am., Inc.*,
2020 WL 9264979 (C.D. Cal. Dec. 28, 2020) .......... 9

*Kuzenski v. Uproxx LLC*,
2023 WL 8251590 (C.D. Cal. Nov. 27, 2023) .......... 4

*Lakes v. Ubisoft, Inc.*,
777 F. Supp. 3d 1047 (N.D. Cal. 2025) .......... 5

*Lee v. Springer Nature Am., Inc.*,
769 F. Supp. 3d 234 (S.D.N.Y. 2025) .......... 4

*Markels v. AARP*,
689 F. Supp. 3d 722 (N.D. Cal. 2023) ........................................ 3, 4, 5

*McGhee v. Arabian Am. Oil Co.*,
871 F.2d 1412 (9th Cir. 1989) ........................................ 6

*Pileggi v. Wash. Newspaper Publ'g Co., LLC*,
146 F.4th 1219 (D.C. Cir. 2025) ........................................ 4

*Ranza v. Nike, Inc.*,
793 F.3d 1059 (9th Cir. 2015) ........................................ 9

*Rudolph v. Hudson's Bay Co.*,
2019 WL 2023713 (S.D.N.Y. May 7, 2019) ........................................ 8

*Silver v. Stripe Inc.*,
2021 WL 3191752 (N.D. Cal. July 28, 2021) ........................................ 8

*Sky Sleep Lab, Inc. v. Cigna Health & Life Ins. Co.*,
2025 WL 736496 (C.D. Cal. Jan. 23, 2025) ........................................ 7

*Yamashita v. LG Chem, Ltd.*,
62 F.4th 496 (9th Cir. 2023) ........................................ 10

**Statutes**

N.Y. Gen. Bus. Law
§ 349 ........................................ 6

## PRELIMINARY STATEMENT

The crux of Plaintiffs' claims is that Defendants promised never to disclose "any aspects of their communications with [Defendants] to third parties," yet disclosed some aspects to Google. (Opp'n at 6.) That is belied by the Privacy Policy here, to which Plaintiffs do not contest they agreed, and which explicitly states that their personal information *could* be "disclose[d]" "[t]o third party service providers." (Lisy Decl. Ex. B at 17, ECF No. 30-4.) All but one of Plaintiffs' claims rests on this faulty assumption and should be dismissed for that reason alone -- though they also fail for additional, dispositive reasons, many of which Plaintiffs did not even bother to address in their Opposition. And Plaintiffs' VPPA claim fares no better. Plaintiffs do not even mention that this Circuit considers information to be "personally identifiable" under the VPPA *only* if an ordinary person -- not Google, or some other third party with superior information or technology -- could use it to identify a specific person. That is why Facebook IDs, which *anyone* can use to identify a specific person, are found to constitute PII, but the 'cid' and 'sid' cookies issued by Google here are not, and why Plaintiffs' cited cases are all irrelevant.

As for Bellesa Enterprises, Plaintiffs (who are Washington and New York residents) have conceded they cannot establish specific personal jurisdiction over that entity in California for harms that have nothing to do with California. They instead claim general jurisdiction based simply on the existence of an address in California connected to Bellesa Enterprises and based on a misreading of governmental records. Nothing in their Opposition comes close to rebutting Defendants' sworn statement that Bellesa Enterprises is headquartered in Montreal, not California. Plaintiffs' request for costly jurisdictional discovery -- based on nothing but a hunch -- should be rejected.

## ARGUMENT

### I. Plaintiffs' Opposition Does Not Save Their Amended Complaint.

#### A. Plaintiffs' VPPA claim (Count V) fails.

##### 1. Plaintiffs ignore binding Ninth Circuit precedent and ignore that Google is not an "ordinary person."

Plaintiffs first claim that "there is no question" that "the Google 'cid' and 'sid' cookies" and "user's language preferences, screen resolution, browser software and version, operating system software and version, device type, network type, and internet service provider" is "'capable' of identifying specific users." (Opp'n at 7–8.) But nowhere in their Opposition do they acknowledge that, under binding Ninth Circuit law, the information must be such that an *ordinary person* is "capable of identifying specific users." Plaintiffs do not explain how any ordinary person could identify specific users with the information here. Indeed, the Third Circuit, applying the same standard applied in this Circuit, concluded that this "browser fingerprinting" information is not PII, as Defendants explained. Plaintiffs have no response to this. *See In re Nickelodeon Consumer Priv. Litig*, 827 F.3d 262, 290 (3d Cir. 2016) (combination of a user's browser and operating system settings not PII even though plaintiffs alleged that the odds of two people having the same combination of settings was 1 in 286,777).

Instead, Plaintiffs claim the Google 'cid' and 'sid' cookies are just like Facebook IDs, a different technology that operates in (legally significant) different ways. (Opp'n at 20–21.) Courts find Facebook IDs to be PII because they "can be used, by anyone, to easily identify a Facebook user . . . by simply appending the [FID] to www.facebook.com." *Heerde v. Learfield Commc'ns, LLC*, 741 F. Supp. 3d 849, 857 (C.D. Cal. 2024). That is why Facebook IDs are found to meet the ordinary-person standard: anyone with a computer can identify a specific individual using them. By contrast, Plaintiffs do not -- and indeed cannot -- allege that anyone *other than* Google can connect the Google ID numbers to individuals. (*See* Opp'n at 10 ("Plaintiffs allege, and discovery will confirm, that the Google ID numbers disclosed

to Google by Defendants allow *Google* to identify their Google accounts" (emphasis added)).) Google -- the "online behemoth" that Plaintiffs allege is "the largest digital advertiser in the country" and engages in "monumental" and "ubiquitous" "surveillance of Americans' internet usage," (FAC ¶¶ 7, 40, 46, 48) -- is not an ordinary person.

Plaintiffs' fall-back positions fare no better. They contend that the Ninth Circuit's decision in *Eichenberger* contemplates that technology may change and that there is a factual issue for discovery. But a motion to dismiss tests whether, assuming Plaintiffs' allegations *can* be proven in discovery, Plaintiffs state a claim as a matter of law. *See Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 981–82, 986 (9th Cir. 2017). Here, as in *Eichenberger*, they do not, because even assuming the technology operates the way Plaintiffs allege, the technology does not disclose PII within the meaning of the VPPA. Moreover, their efforts to distinguish *Eichenberger* fall flat. They acknowledge that there, Adobe could identify specific users based on information that Adobe had "from sources other than Defendant." (Opp'n at 9.) *See Eichenberger*, 876 F.3d at 981 ("Adobe uses the information obtained from Defendant to identify specific consumers by connecting that information 'with existing data already in Adobe's profile of th[ose] individual[s].'"). And the same is true here even under Plaintiffs' theory; just like Adobe, Google is able to "connect[] th[e] information 'with existing data already in [Google]'s profile." *See id.* And Defendants are not alleged to even have the key to translate the 'cid' or 'sid' cookies into specific Google accounts. Google has that information only "from sources other than Defendant[s]." *See id.* Plaintiffs' alleged facts, even if true, are not actionable.

**2. Plaintiffs are not "consumers" under the VPPA.**

Plaintiffs next contend they are "consumers" under the VPPA because they created accounts on Bellesa and watched videos there. But plaintiffs must plead more than merely visiting a website and watching videos to be a "consumer." *Markels v. AARP*, 689 F. Supp. 3d 722, 728 (N.D. Cal. 2023). Plaintiffs' arguments fail for two

independent reasons.

First, merely registering for an account -- which is all Plaintiffs allege here -- does not make Plaintiffs "consumers" under the VPPA. *Kuzenski v. Uproxx LLC*, 2023 WL 8251590, at *4 (C.D. Cal. Nov. 27, 2023) (plaintiff not a "consumer" even where he registered for an account). In each of the cases on which Plaintiffs rely, the plaintiffs alleged they provided the defendant with their "PII, including [their] name and email address." *See Jackson v. Fandom, Inc.*, 2023 WL 4670285, at *4 (N.D. Cal. July 20, 2023); *Ade v. Viki, Inc.*, 2024 WL 1880153, at *1 (N.D. Cal. Mar. 28, 2024) (same); *In re Hulu Privacy Litig.*, 2012 WL 3282960, at *8 (N.D. Cal. Aug. 10, 2012) (profile included "included name[ and] location preference information"); *Lee v. Springer Nature Am., Inc.*, 769 F. Supp. 3d 234, 254 (S.D.N.Y. 2025) (plaintiffs "submit their name, a valid email address, and payment information"); *see also Markels*, 689 F. Supp. 3d at 728 (plaintiffs gave "personal information").[1] Plaintiffs here do not allege they provided Defendants with their name or any email address linked to them. Indeed, they do not allege anything that they provided to Defendants, save for the Google cookies and "browser fingerprint" data (which, as explained, is not PII).

Second, Plaintiffs do not explain their position that there need not be any link between the subscription and the videos at issue. In fact, there are a litany of cases holding that there must be a link. *See Carroll v. Chick-Fil-A, Inc.*, 2024 WL 1091193, at *1 (N.D. Cal. Feb. 13, 2024) (collecting cases); *Pileggi v. Wash. Newspaper Publ'g Co., LLC*, 146 F.4th 1219, 1237 (D.C. Cir. 2025) ("Subscribing to an e-newsletter that includes videos and video links, by itself, is not enough to make someone a 'consumer' under the Video Privacy Act. Instead, the videos for which viewing

---

[1] *Jefferson v. Healthline Media, Inc.*, 674 F. Supp. 3d 760, 764 (N.D. Cal. 2023), cited by Plaintiffs (at 13), explains that even providing one's name and address is not sufficient under the VPPA; the provision of the name and address must be in exchange for a good or service. *See id.* ("Consequently, a VPPA subscriber is not just someone who provides her name and address to a website, for some undisclosed purpose or benefit.").

history is disclosed must be the same video materials or services that the individual purchased, rented, or subscribed to."). And indeed, in *Markels*, on which Plaintiffs rely (at 14–15), the court concluded that the plaintiffs *failed* to plead they were consumers because "the videos are readily available to anyone who visits the site." 689 F. Supp. 3d at 728. "[T]here must be some nexus between the plaintiff and defendant and the video content provided." *Id.* But here, Plaintiffs do not allege that they accessed videos only available to registered users.[2] And although they continue to (falsely) allege in their FAC that all videos on Bellesa.co require an account to view them, (FAC ¶ 4), they now admit that there are indeed videos available to anyone.

### B. Plaintiffs acknowledge they agreed to Bellesa's Privacy Policy, which dooms most of their claims.

Plaintiffs concede that they were on notice of, and agreed to, Bellesa's Privacy Policy. (*Compare* Mot. at 14–16; Opp'n at 5–6 (failing to respond to argument that Plaintiffs agreed to the Privacy Policy).) They instead claim that the Privacy Policy is not drafted with enough exacting detail -- including specifying the exact technologies deployed -- to establish their consent. (Opp'n at 6.) But they cite no case holding that such granular detail is required -- and courts have concluded that granularity is *not* required. *See Lakes v. Ubisoft, Inc.*, 777 F. Supp. 3d 1047, 1056 (N.D. Cal. 2025) (rejecting Plaintiffs' vision of "a highly granular disclosure for the Pixel to be permitted").

The Privacy Policy indeed discloses that Bellesa would share "Personal Information," including information "willingly supplie[d] . . . to Bellesa" and "usage of/engagement with the Bellesa Website," "[t]o third party service providers." (ECF No. 30-4 at 16–17.) Courts have found consent on similar privacy policies. *See, e.g.*,

[2] Plaintiffs offer no authority for the proposition that it is Defendants' burden to disprove whether they viewed content available to registered users only. It is instead Plaintiffs' burden to adequately allege the elements of their claim. And even though Defendants raised this precise argument in their motion to dismiss Plaintiffs' original complaint, Plaintiffs tellingly failed to allege in their FAC that they viewed content available only to registered users. (*See* Mot. to Dismiss at 13, ECF No. 20-1.)

*Garcia v. Enter. Holdings, Inc.*, 78 F. Supp. 3d 1125, 1136 (N.D. Cal. 2015) (dismissing CIPA claim where "Privacy Policy expressly states that 'we may share your personal information with our agents, representatives, contractors and service provider'"). Plaintiffs' allegation (Opp'n at 6) that they did not consent to Defendants' right to "disclose *any aspects* of their communications with [Bellesa] to third parties" is thus contradicted by the plain language of the Privacy Policy. No reasonable consumer reading those disclosures could conclude that their information would never be disclosed to third parties.

Plaintiffs' consent thus defeats their invasion of privacy claim (Count I) (*id.* at 18–19), negligence claim (Count II) (*id.* at 19–20), implied-contract claim (Count III) (*id.* at 20–21), unjust enrichment claim (Count IV) (*id.* at 21–22), ECPA claim (Count VI) (*id.* at 13–16), N.Y. General Business Law § 349 claim (Count VII) (*id.* at 17–18), and their CIPA claim (Count VIII)[3] (*id.* at 13–16).

**C. Plaintiffs fail to allege an implied contract under any applicable law.**

Regardless of the law that applies, Plaintiffs' FAC fails to adequately allege an implied-contract claim.[4] Courts in California are consistent that, to allege an implied-contract claim, Plaintiffs must "sufficiently plead that [Defendants] agreed to and then breached a *specific* obligation." *Frezza v. Google Inc.*, 2012 WL 5877587, at *4 (N.D.

---

[3] Their CIPA claim also fails for the independent reason (which Plaintiffs do not contest) that CIPA does not apply extraterritorially. *See infra* at 8.

[4] Plaintiffs (Washington and New York residents who pursue their claims on behalf of Washington and New York subclasses) assume that California law applies, but they do not explain why. California's choice-of-law analysis entails three steps: (1) "whether the laws differ," (2) "whether a 'true conflict' exists in that each of the relevant jurisdictions has an interest in having its law applied," and (3) if both states have an interest, then the court applies "the law of the state whose interest would be the more impaired if its law were not applied." *Coufal Abogados v. AT&T, Inc.*, 223 F.3d 932, 934 (9th Cir. 2000). To the extent there is any conflict of law, which Plaintiffs seem to imply, step two shows that California law does not apply. California has no interest in having its law applied. No party is a resident of California; Plaintiffs are residents of Washington and New York and Defendants are Canadian and Delaware entities headquartered in Canada. (*See* FAC ¶¶ 16, 21, 26, 27; ECF No. 20-2, ¶ 6.) No harm is alleged to have occurred in California. *See, e.g.*, *McGhee v. Arabian Am. Oil Co.*, 871 F.2d 1412, 1423 (9th Cir. 1989) (concluding California had no governmental interest in applying its law to defamation suit to non-California residents for statements made outside California).

Cal. Nov. 20, 2012) (emphasis added); *see also, e.g.*, *Sky Sleep Lab, Inc. v. Cigna Health & Life Ins. Co.*, 2025 WL 736496, at *3 (C.D. Cal. Jan. 23, 2025) ("additional and specific allegations" concerning the specific promises "required to find an implied contract"); *In re Anthem, Inc. Data Breach Litig.*, 162 F. Supp. 3d 953, 982–83 (N.D. Cal. 2016) (to pursue implied-contract claim, "Plaintiffs must elaborate upon the nature and scope of the implied contract in the pleadings"). Yet Plaintiffs' FAC does not allege the source of any "specific" promise. Although their Opposition relies on the Privacy Policy, the Privacy Policy appears nowhere in their implied-contract count for any "specific" promise other than one to "safeguard and not disclose their Sensitive Information without consent." (FAC ¶ 132; *see also id.* ¶¶ 19, 24 (alleging that Plaintiffs "never authorized Bellesa to disclose *any aspect* of her communications with Bellesa through the Website *to third parties*" (emphases added)).) The implied-contract term Plaintiffs allege is unequivocal, yet that supposed unequivocal promise conflicts directly with the Privacy Policy, in which Bellesa disclosed that Plaintiffs' information *would* be disclosed to third parties. (*See* ECF No. 30-4 at 3.) Plaintiffs allege no further specific agreement by Defendants, and so their implied-contract claim fails.

Plaintiffs' cited cases are far afield. Some involve allegations far more specific than here, such as citations to the specific written policies or terms. *See Gerber v. Twitter, Inc.*, 2024 WL 5173313, at *9 (N.D. Cal. Dec. 18, 2024) (citing to specific documents); *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, 2017 WL 3727318, at *47 (N.D. Cal. Aug. 30, 2017) ("CCAC identifies the particular provisions of Defendants' Terms of Service that allegedly create the implied contract"). Others involve defendants who were given access to troves of personal data including Social Security numbers and credit-card numbers, and were alleged to have not adequately safeguarded that data against intruders. *See In re Ambry Genetics Data Breach Litig.*, 567 F. Supp. 3d 1130, 1140 (C.D. Cal. 2021) ("names, dates of birth, Ambry account numbers, health insurance information, confidential medical information, medical

diagnoses, billing information including addresses, email addresses, and telephone numbers, and Social Security numbers"); *Rudolph v. Hudson's Bay Co.*, 2019 WL 2023713, at *11 (S.D.N.Y. May 7, 2019) (data breach affecting credit-card numbers). Plaintiffs cite no case in which an implied contract to *never* disclose browsing history to *any* third party was created by signing up for an account on a website.

**D. Plaintiffs' unjust enrichment claim (Count IV) also fails because a plaintiff cannot sue in tort and claim unjust enrichment as a matter of law.**

Plaintiffs' consent defeats their unjust enrichment claim, but their claim also fails for the independent reason that, as a matter of California law (which, again, Plaintiffs assume applies), a party cannot bring an unjust enrichment claim that is duplicative of their tort or statutory claims. *See In re Apple & AT&T iPad Unlimited Data Plan Litig.*, 802 F. Supp. 2d 1070, 1077 (N.D. Cal. 2011) ("plaintiffs can not assert unjust enrichment claims that are merely duplicative of statutory or tort claims"). Nor can Plaintiffs preserve this claim as a ground to seek restitution. "In California, 'there is not a standalone cause of action for unjust enrichment, which is synonymous with restitution.'" *Silver v. Stripe Inc.*, 2021 WL 3191752, at *8 (N.D. Cal. July 28, 2021). "As a result, courts have consistently dismissed stand-alone claims for unjust enrichment." *Brodsky v. Apple Inc.*, 2019 WL 4141936, at *10 (N.D. Cal. Aug. 30, 2019).

**E. Plaintiffs concede their remaining claims fail.**

Plaintiffs offer no response at all to Bellesa's arguments that: (1) their CIPA claim (Count VIII) fails because CIPA does not apply extraterritorially (*see* Mot. at 11–12); (2) their UCL claim (Count IX) fails because the UCL does not apply extraterritorially and because they lack statutory standing (*see* Mot. at 11–12, 16–17); and (3) their invasion of privacy claim under New York law fails because there is no such claim under New York law (*see* Mot. at 19). Each of those claims should, therefore, be dismissed with prejudice. *See, e.g.*, *Dinnerman v. Datto, Inc.*, 2024 WL 4406923, at *4 (C.D. Cal. Aug. 9, 2024) ("Having failed to make any argument in

opposition, Plaintiffs have waived these claims and these claims are DISMISSED WITH PREJUDICE.”).

## II. Plaintiffs have not established general personal jurisdiction over Bellesa Enterprises US Inc. and are not entitled to jurisdictional discovery.

### A. An in-state mailing address does not support general jurisdiction.

Perhaps recognizing they have no evidence (or even allegations) tying their claims to California, Plaintiffs have abandoned any attempt to rely on specific personal jurisdiction over Bellesa Enterprises. Plaintiffs still make no attempt to meet the “exacting standard” of general personal jurisdiction, *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1069 (9th Cir. 2015), demonstrating that Bellesa Enterprises is “essentially at home” here, *Bristol-Myers Squibb Co. v. Super. Ct.*, 582 U.S. 255, 271 (2017). Instead, Plaintiffs rely only on the fact that Bellesa Enterprises has listed an address in California on certain governmental filings. (*See* Opp’n at 22.) Yet it is black-letter law that having an office in a state -- even multiple offices -- is not enough to establish general personal jurisdiction. *See, e.g.*, *Daimler AG v. Bauman*, 571 U.S. 117, 123 (2014) (finding “multiple California-based facilities,” including a regional office, insufficient to establish general personal jurisdiction); *Kesterson v. Brenntag N. Am., Inc.*, 2020 WL 9264979, at *5 (C.D. Cal. Dec. 28, 2020) (“even if [defendant] did have an office and employees in the state, without more, such a limited presence would still not be enough for this Court to exercise general personal jurisdiction over it”). Thus, even if Bellesa Enterprises has an address in California, that does not dispute Defendants’ evidence that its principal place of business is in Montreal, not California. *See, e.g.*, *Hurt v. SH Grp. Hotels & Residence U.S. LLC*, 2024 WL 5244725, at *3 (C.D. Cal. Dec. 30, 2024) (evidence that defendant’s website listed a California address as its only address insufficient to dispute sworn statement that the company’s principal place of business -- *i.e.*, where the company’s “nerve center” is -- was in Florida for diversity jurisdiction); *see also Caston v. Hoffmann-La Roche, Inc.*, 2025 WL 2837732, at *1 (9th Cir. Oct. 7, 2025) (applying nerve-center test to personal jurisdiction).

Further, Plaintiffs' contention that certain FCC records pertain to "telecommunications and video recording equipment" which are "relevant to the production of the pornographic videos hosted on the Website," (Opp'n at 22), is proven objectively false by even a modicum of diligence. Both of Plaintiffs' exhibits refer to the same product, bearing FCC Identifier "2BALQ-SKU-LUV11002" (*see* ECF Nos. 35-2, 35-3) and Exhibit 2B identifies that product as the "Luvli Ditto 2," which a simple Google search reveals to be a remote-controlled sex toy -- not "telecommunications and video recording equipment." (*See* Lisy Decl. Ex. E (Luvli Ditto 2, *Google.com*).) Plaintiffs have drawn no connection between this physical product and their alleged privacy violations, nor could they.

### B. Plaintiffs' proposed jurisdictional discovery, based only on their hunch, would be a costly and unproductive fishing expedition.

Defendants' specific denials shift the burden to Plaintiffs to show that jurisdictional discovery would be more than a "fishing expedition." *Yamashita v. LG Chem, Ltd.*, 62 F.4th 496, 508 (9th Cir. 2023). Plaintiffs cannot meet that burden based on "speculative allegations of attenuated jurisdictional contacts" that offer "little more than a hunch that [it] might yield jurisdictionally relevant facts," *e.g.*, *In re ZF-TRW Airbag Control Units Prods. Liab. Litig.*, 2022 WL 19432575, at *5 (Kronstadt, J.) (C.D. Cal. Aug. 15, 2022) (citations omitted).

Plaintiffs cannot dispute that Bellesa Enterprises is not involved in the day-to-day operation of the websites at issue in this case or that its principal place of business is in Montreal. (*See* ECF No. 20-2, ¶¶ 6, 7.) Plaintiffs instead speculate that there could be evidence that Bellesa Enterprises has its principal place of business in California. This is not enough. *See, e.g.*, *Getz v. Boeing Co.*, 654 F.3d 852, 860 (9th Cir. 2011) (affirming denial of discovery when plaintiffs "fail[ed] to identify any specific facts, transactions, or conduct that would give rise to personal jurisdiction" and offered only "purely speculative allegations").

## CONCLUSION

Defendants' motion should be granted, and the case dismissed with prejudice.

DATED: November 4, 2025

Respectfully submitted,

MINTZ, LEVIN, COHN, FERRIS, GLOVSKY, AND POPEO, P.C.

By: */s/ Christopher A. Lisy*

Christopher A. Lisy (admitted *Pro Hac Vice*)
Nada I. Shamonki
Nadia A. Zivkov

*Attorneys for Defendants Bellesa Enterprises US Inc. and Bellesa Productions Inc.*

**LOCAL RULE 11-6.2 CERTIFICATION**

The undersigned, counsel of record for Defendants Bellesa Enterprises US Inc. and Bellesa Productions Inc., certifies that this brief contains 10 pages, which complies with section 9(d) of the Initial Standing Order for Civil Cases Assigned to Judge John A. Kronstadt.

Date: November 4, 2025

*/s/ Christopher A. Lisy*
Christopher A. Lisy